COURTNEY HUDSON GOODSON, Associate Justice
Appellants 3 Rivers Logistics, Inc.; Heath Holbert; Amy Holbert; Gary Moss; Renee Moss; Judy McSwain; Richard F. Allen, Jr., and Judy Allen, as Trustees of the 2013 Allen Family Revocable Trust; and Richard F. Allen, Jr., appeal the dismissal of their nuisance lawsuit against appellee Brown-Wright Post No. 158 of the American Legion, Department of Arkansas, Inc. (the Legion). For reversal, appellants argue that the circuit court relied on an inapplicable statute to find that the Legion enjoyed immunity from appellants' lawsuit and erred in not finding the immunity statute unconstitutional. We affirm.
The Legion is a charitable organization that owns forty acres located approximately five miles south of DeWitt in rural Arkansas County. Appellant 3 Rivers Logistics, Inc., is a trucking-logistics business operating on a tract of land adjacent to, and to the east of, the Legion property. Appellants Gary Moss and Renee Moss own land adjoining the Legion land to the north. Appellants Heath Holbert and Amy Holbert own a house and land to the north of the Moss property. Appellant Judy McSwain lives in a house on property across a roadway to the west of the range. Appellant Richard F. Allen owns and operates an outboard motor-repair shop on the same tract of land as the McSwain house. Appellants Richard F. Allen and Judy Allen, as trustees of the 2013 Allen Family Revocable Trust, own land to the north of the outboard-repair business.
The Legion began building a shooting range that included areas designated for the use of pistols, rifles, and shotguns.[1] On November 2, 2016, after shooting began at the range, appellants filed a complaint alleging that the noise from the range activities interfered with the use and enjoyment of their land and constituted a nuisance. Appellants sought a preliminary injunction preventing the Legion from using the range, and additionally, or alternatively, damages for the decrease in the value of their land. In response, the Legion filed a motion to dismiss. The Legion argued that appellants' complaint should be dismissed because it was based only on noise, and Arkansas Code Annotated § 16-105-502 (Repl. 2016) grants shooting ranges immunity for noise-based lawsuits if the range is in compliance with local noise-control ordinances.
*140 The circuit court held a hearing on January 11, 2017, to consider the Legion's motion to dismiss. The parties agreed that no local governmental unit had enacted a noise-control ordinance when the Legion began constructing and operating the range. Appellants argued that the Legion was not entitled to immunity because no local noise ordinance existed. Appellants cited Yates v. Kemp , 979 N.E.2d 678 (Ind. App. 2012), in support of their argument that the Legion was entitled to immunity only if it complied with a local noise ordinance in existence. The Legion argued that Jenkins v. Clayton , 273 Ga. 439, 542 S.E.2d 503 (2001), and Sara Realty, LLC v. Country Pond Fish & Game Club, Inc. , 158 N.H. 578, 972 A.2d 1038 (2009), offer guidance because the courts in those cases found immunity for shooting ranges pursuant to statutes like ours, even in the absence of a local noise-control ordinance. The circuit court determined that the Arkansas immunity statute was similar to the Georgia and New Hampshire statutes, and not like the Indiana statute, which affirmatively required the existence of a local noise ordinance.[2] The circuit court therefore granted the Legion's motion to dismiss. Appellants filed a timely appeal.
Appellants first argue that Arkansas Code Annotated § 16-105-502 (Repl. 2016) does not apply in this instance because the language of the statute requires the existence of a local noise ordinance with which to comply. The Legion argues that the plain language of the statute demonstrates that a shooting range is entitled to immunity from noise-based lawsuits as long as it is not in violation of any local noise ordinances. Because this is an issue of statutory interpretation, our review is de novo. DeSoto Gathering Co., LLC v. Hill , 2017 Ark. 326, 531 S.W.3d 396. However, this court will accept a circuit court's interpretation of the law unless it is shown that the court's interpretation was in error. Cockrell v. Union Planters Bank , 359 Ark. 8, 194 S.W.3d 178 (2004).
In relevant part, Arkansas Code Annotated § 16-105-502 provides:
(a) Notwithstanding any other provision of law to the contrary, a person who operates or uses a sport shooting range in this state shall not be subject to civil liability or criminal prosecution for noise or noise pollution resulting from the operation or use of the sport shooting range if the sport shooting range is in compliance with noise control ordinances of local units of government that applied to the sport shooting range and its operation at the time the sport shooting range was constructed and began operation.
(b) A person who operates or uses a sport shooting range is not subject to an action for nuisance, and no court of the state may enjoin the use or operation of a sport shooting range on the basis of noise or noise pollution, if the sport shooting range is in compliance with noise control ordinances of units of local government that applied to the sport shooting range and its operation at the time the sport shooting range was constructed and began operation.
We begin our analysis by applying the basic rules of statutory construction. The primary rule of statutory construction is to give effect to the intent of the legislature. Ark. Dep't of Corr. v. Shults , 2017 Ark. 300, 529 S.W.3d 628. We construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. Id. We reconcile statutory provisions in order *141 to make them consistent, harmonious, and sensible and to give effect to every part. Keep Our Dollars in Independence Cty. v. Mitchell , 2017 Ark. 154, 518 S.W.3d 64. When the language of a statute is plain and unambiguous, this court determines legislative intent from the ordinary meaning of the language used. Foster v. Foster , 2016 Ark. 456, 506 S.W.3d 808.
Applying the principles set forth above, we conclude that the language of the statute clearly expresses the General Assembly's intent to give a shooting range immunity from noise-based lawsuits if it is not in violation of local noise ordinances at the time it was constructed and began operation. If there are no ordinances regulating noise, the range is in compliance and the immunity statute applies. We find support for our conclusion not only in the language of our statute, but also from the Georgia Supreme Court's construction of a similar immunity statute.[3] Georgia's statute, like ours, provided shooting ranges with immunity from noise-based lawsuits when they complied with local noise ordinances. The Georgia statute, OCGA § 41-1-9(c) provided, in pertinent part:
No sport shooting range ... shall be subject to any action for civil or criminal liability, damages, abatement, or injunctive relief resulting from or relating to noise generated by the operation of the range if the range remains in compliance with noise control or nuisance abatement rules, regulations, statutes, or ordinances applicable to the range on the date on which it commenced operation.
Although another court's construction of a statute that is similar to ours is not binding, it may be persuasive. Jones v. Brinkman , 200 Ark. 583, 139 S.W.2d 686 (1940). The Georgia Supreme Court applied a statutory-construction rule much like ours and concluded:
Ascribing ordinary signification to the words of this statute, as we are bound to do, OCGA § 1-3-1, we think its plain, commonsense meaning is as defendants suggest: A sporting clay course cannot be deemed a sound generating nuisance if it does not run afoul of local noise control ordinances (or ordinances aimed at the regulation of a sport shooting range).
Jenkins, 542 S.E.2d at 503. In reversing the judgment against the owners of the shooting range, the Georgia Supreme Court stated:
Jenkins County has not enacted an ordinance pertaining to noise control in general, or sport shooting ranges in particular. Thus, it cannot be said that defendants' sporting clay course failed to comply with noise control ordinances on the date on which it commenced operation. It follows that defendants' course could not be enjoined as a noise generating nuisance, and that the trial court erred in ruling otherwise.
Id. Similarly, the people of Arkansas County have chosen not to enact a noise-control ordinance.
The Indiana Court of Appeals decision in Yates also lends support to our conclusion.
*142 There, the Indiana immunity statute specifically required an existing local noise-control law or ordinance for immunity to apply:
A person who owns, operates, or uses a shooting range is not liable in any civil or criminal matter relating to noise or noise pollution that results from the normal operation or use of the shooting range if the shooting range complies with a law or an ordinance that applied to the shooting range and its operation at the time of the construction or initial operation of the shooting range, if such a law or ordinance was in existence at the time of the construction or initial operation of the shooting range.
Indiana Code § 14-22-31.5-6 (1996) (emphasis added). In keeping with the Indiana statute, the Indiana Court of Appeals concluded that the owners of a shooting range were not entitled to immunity from a nuisance lawsuit because no local noise ordinance existed. Yates , 979 N.E.2d at 681.
Clearly, the Indiana statute differed significantly from ours in that it provided immunity only "if such a law or ordinance was in existence at the time of the construction or initial operation of the shooting range." The express language of the Indiana statute affirmatively required an existing local-noise ordinance, unlike Arkansas Code Annotated § 16-105-502, which does not. We give the words of our statute their ordinary and usually accepted common meanings, and we will not add words to convey a meaning that is not there. Our Comty., Our Dollars v. Bullock , 2014 Ark. 457, 452 S.W.3d 552. Contrary to appellants' argument, our interpretation does not render any words meaningless. Furthermore, the statute clearly expresses the will of the General Assembly to modify the common law of nuisance to reserve to local governments the power to regulate noise from shooting ranges. We conclude that the Legion is entitled to immunity as long as the shooting range did not violate any local noise ordinances existing at the time it was constructed and began operation. Because no local noise control ordinances existed at the time the shooting range in this case began operation, the Legion was in compliance with local noise control ordinances, and the circuit court was correct in finding that the Legion was entitled to immunity.
We are not persuaded by appellants' argument that applying our statute here would yield absurd results. Although appellants argue the range could operate 24 hours a day and that ranges of any size could be built in any area, Arkansas County retains broad authority to enact zoning regulations. See Ark. Code Ann. § 14-17-209 (Repl. 2013) (declaring that county planning boards have authority to regulate uses of land and matters "necessary to the health, safety, and general welfare of the county"). Conversely, interpreting the statute to require a range owner to obtain passage of a local noise ordinance when one did not exist previously would be absurd.
Likewise, we are not persuaded by appellants' argument that requiring an existing noise-control ordinance before granting immunity protects the parties' reliance interest. A party seeking to build a sport shooting range is just as entitled to rely on the lack of a noise-control ordinance as it is to rely on an existing noise-control ordinance. In either situation, the party building the range is relying on the ordinances of the local governmental unit.
Appellants next argue that, even if Arkansas Code Annotated § 16-105-502 does apply, it violates their constitutionally protected property rights. The Arkansas Constitution provides that property rights are elevated "before and higher than any constitutional sanction."
*143 Ark. Const. art. 2 § 22. Appellants argue that immunizing the Legion from a noise-based lawsuit constitutes a taking because the Legion's activities disrupt the use of their property and reduce its value. We disagree.
We are required to construe a statute as constitutional if possible. Hobbs v. Jones , 2012 Ark. 293, 412 S.W.3d 844. All statutes are presumed to be constitutional, and this court resolves all doubts in favor of constitutionality. Landmark Novelties, Inc. v. Ark. State Bd. of Pharmacy , 2010 Ark. 40, 358 S.W.3d 890. The party challenging a statute's constitutionality has the burden of proving that it is unconstitutional. Id. The taking alleged in this case is the appellants' diminished enjoyment of the property because of noise from the shooting range and the reduction in the value of the appellants' property because of the noise. Appellants allege that the government action effecting the taking is the immunity granted by Arkansas Code Annotated § 16-105-502. However, the mere fact that a partial use of one's property is burdened by regulation does not amount to a taking. J.W. Black Lumber Co., Inc. v. Ark. Dep't of Pollution Control & Ecology , 290 Ark. 170, 717 S.W.2d 807 (1986).
Additionally, we have held that regulations that affected less than all of the use or value of property were not takings. For instance, in Barrett v. Poinsett County , 306 Ark. 270, 811 S.W.2d 324 (1991), a solid waste disposal authority acquired an option to purchase land for a price of $750,000 for use as a landfill. Poinsett County opposed the landfill and enacted a zoning ordinance to prevent the property from being used as such. The transaction was never completed because of the zoning ordinances and later changes in state law. The landowners argued that Poinsett County's actions were a taking. We held that no reduction in the value of the property had been shown, and the landowners demonstrated only a lessening of one profitable use of the property. Also, in Winters v. State , 301 Ark. 127, 782 S.W.2d 566 (1990), we concluded that mandatory quarantine regulations did not amount to a taking when the owner of a $1,000 horse would be forced to sell it for $200 if the owner could not comply with the regulations. Similarly, here, the burden on appellants' use of their property, and its diminution in value, is insufficient to rise to the level of a taking.
In sum, because the people of Arkansas County have not enacted any noise-control ordinances that applied to the shooting range, the Legion is in compliance, and the immunity statute applies. Therefore, the circuit court correctly determined that the immunity provisions of Arkansas Code Annotated § 16-105-502 bar appellants' noise-based lawsuit. The circuit court also correctly found in this case that the immunity statute did not constitute a taking under the Arkansas Constitution, and therefore did not err in dismissing appellants' complaint.
Affirmed.
Baker, Hart, and Wynne, JJ., dissent.
Josephine Linker Hart, Justice, dissenting.
I dissent. The majority holds that Ark. Code Ann. § 16-105-502 grants Appellee immunity from Appellants' nuisance suit. Ark. Code Ann. § 16-105-502 grants immunity from noise-based nuisance suits to sport shooting ranges that are built to comply with local noise control ordinances. The language of this statute necessarily contemplates there being a local noise control ordinance establishing how much noise the local government considers acceptable, i.e., something for a sport shooting range to comply with. There is no such noise *144 control ordinance in Arkansas County where Appellee operates its sport shooting range, so the statute should not apply to Appellee.[4]
The basic rule of statutory construction to which all other interpretive guides must yield is to give effect to the intent of the legislature. Leathers v. Cotton , 332 Ark. 49, 52, 961 S.W.2d 32, 34 (1998) (citing Mountain Home Sch. Dist. v. T.M.J. Builders , 313 Ark. 661, 664, 858 S.W.2d 74, 76 (1993) ). Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. Id. The first rule in considering the meaning of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. Id. The statute should be construed so that no word is left void, superfluous, or insignificant; and meaning and effect must be given to every word in the statute if possible. Locke v. Cook , 245 Ark. 787, 793, 434 S.W.2d 598, 601 (1968).
Ark. Code Ann. § 16-105-502 provides in relevant part as follows:
(a) Notwithstanding any other provision of law to the contrary, a person who operates or uses a sport shooting range in this state shall not be subject to civil liability or criminal prosecution for noise or noise pollution resulting from the operation or use of the sport shooting range if the sport shooting range is in compliance with noise control ordinances of local units of government that applied to the sport shooting range and its operation at the time the sport shooting range was constructed and began operation.
(b) A person who operates or uses a sport shooting range is not subject to an action for nuisance, and no court of the state may enjoin the use or operation of a sport shooting range on the basis of noise or noise pollution, if the sport shooting range is in compliance with noise control ordinances of units of local government that applied to the sport shooting range and its operation at the time the sport shooting range was constructed and began operation.
Ark. Code Ann. § 16-105-502(a) - (b) (emphasis added). The italicized portion of this excerpt describes the condition necessary for a sport shooting range to enjoy immunity from a noise-based nuisance suit. In order for a sport shooting range to enjoy the immunity, the sport shooting range must comply with noise control ordinances-but not just any noise control ordinances, as reflected by the underlined portion.
The statute specifies that the noise control ordinances must have "applied to the sport shooting range" when it began operation. In this case, there was no local noise control ordinance to do the necessary "applying." If the legislature intended for this statute to immunize a sport shooting range even when there is no local noise ordinance that would "apply" to that sport shooting range, the legislature would have omitted the underlined portion. The New Hampshire Supreme Court reached the same conclusion when interpreting a similar *145 statute in Sara Realty v. Country Pond Fish and Game Club, Inc. , 158 N.H. 578, 972 A.2d 1038, 1041 (2009) ("We read this condition to apply if and only if such regulation exists.").
The majority's interpretation stands for the proposition that any sport shooting range that exists or comes to exist in any place where there is not already a noise-control ordinance in effect is forever immune from noise-based nuisance suits without limitation. Again, if this is what the legislature intended, the legislature would have simply said so. Because the majority's decision renders the underlined portion of the statute above meaningless, I dissent.
Baker and Wynne, JJ., join.

"Sport shooting range" or "range" means an area designated and operated for the use of rifles, shotguns, pistols, silhouettes, skeet, trap, black powder, or any other similar sport shooting. Ark. Code Ann. § 16-105-501(3) (Repl. 2016).

The circuit court's first order addressed only the immunity statute, but it later entered a supplemental order rejecting appellants' constitutional argument.

The Legion also cites Sara Realty , supra , in support of its proposed reading of our statute. There, the New Hampshire statute provided immunity for ranges if they complied with noise control ordinances, or if they were in operation before the date the complaining party acquired its land. The range owner in that case was granted immunity, but the New Hampshire Supreme Court said the ordinance-based immunity provision did not apply in the absence of a noise control ordinance. However, the court cited Jenkins , and later said both provisions of the immunity statute operated as independent bars to the nuisance lawsuit. Because of these internal inconsistencies, Sara Realty is of dubious persuasive value.

This, of course, would not mean that Appellee is automatically liable for Appellants' nuisance suit; it would only mean that Appellee is not immune from noise-based nuisance suits as a general matter. Appellants would still have to actually establish the elements of their nuisance claim, which would require proof that Appellee is engaging in conduct "that unreasonably interferes with the use and enjoyment of the lands of another and includes conduct on property that disturbs the peaceful, quiet, and undisturbed use and enjoyment of nearby property." Aviation Cadet Museum, Inc. v. Hammer , 373 Ark. 202, 208, 283 S.W.3d 198, 203 (2008).